## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

———————

**NANODETEX CORPORATION,**

    Plaintiff,

v.                                                                                              Civ. No. 05-1041 BB/LAM

**SANDIA CORPORATION, DEFIANT
TECHNOLOGIES, RONALD MANGINELL, DOUG
ADKINS, and PATRICK LEWIS,**

    Defendants;

**SANDIA CORPORATION,**

    Defendant-Counterclaimant,

v.

**NANODETEX CORPORATION, ALAN P.
SYLWESTER, and ANGELO L. SALAMONE,**

    Counterdefendants;

**DEFIANT TECHNOLOGIES,**

    Defendant-Counterclaimant,

v.

**NANODETEX CORPORATION, ALAN P.
SYLWESTER, and ANGELO L. SALAMONE,**

    Counterdefendants.

### Memorandum Opinion And Order

This matter is before the Court for consideration of a motion for summary judgment

(Doc. 198) filed by Defendant Sandia Corporation ("Sandia").  The motion addresses Counts II,

III, and IV of Plaintiff's amended complaint; these counts were brought against Sandia only and

not against any other Defendant.  Having reviewed the submissions of the parties and the applicable law, the Court finds the motion should be granted and Plaintiff's claims under these counts should be dismissed.

Plaintiff and Sandia entered into a business agreement, the exact terms of which are in dispute.  After Sandia notified Plaintiff of alleged breaches of the agreement, Plaintiff filed this lawsuit against Sandia and other Defendants.  Count II of the amended complaint alleges a violation of a claimed public policy of good faith and fair dealing under New Mexico's Unfair Practices Act ("UPA"), NMSA §§ 57-12-1 *et seq.*; Count III alleges a separate violation of the UPA, but cites to NMSA § 57-1-1, which is the Antitrust Act, and claims a conspiracy in restraint of trade, which is an antitrust claim; and Count IV alleges another separate violation of the UPA.  Sandia has moved for summary judgment on all three of these claims.

**Standard of Review**

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*,  413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986).  To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at minimum, an inference of the existence of each essential element of the case.  *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

**Count II – Violation of Public Policy of Good Faith and Fair Dealing:**  Plaintiff contends the UPA establishes a public policy of good faith and fair dealing that may be the basis of a cause of action under the UPA.  The only authority cited for this proposition is a case in which the issue was not discussed or decided by either the district court or the Tenth Circuit. Instead, the claim was dismissed by both courts as preempted by federal law.  *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1205-06, 1212-13 (2001).  Plaintiff argues that since the UPA claim in *Garley* was not dismissed on its merits, but merely on the basis of federal preemption, both the Tenth Circuit and the district court implicitly recognized that the UPA does create an actionable claim for violation of good faith and fair dealing.  The Court disagrees with this proposition, and also disagrees that the UPA creates the type of claim advanced by Plaintiff.

The mere fact that neither *Garley* court felt it necessary to address the merits of the good-faith-and-fair-dealing claim says nothing about whether such a claim is viable under the UPA. When a court does not decide or even mention an issue, the court's opinion cannot be considered precedential for purposes of that question.  *See, e.g., Sacco v. United States*, 452 F.3d 1305, 1308 (Fed. Cir. 2006) (case was not binding precedent on a point because the court did not address the issue).  Since there was a readily-available alternative means of dismissing the claim, there was no reason for either court to expend any effort attempting to determine the viability of the claim.

Furthermore, had either *Garley* court actually considered whether the UPA contains a cause of action that is based on the failure to exercise good faith or engage in fair dealing, the answer would have been in the negative.  The UPA declares two things unlawful:  unfair or deceptive trade practices, and unconscionable trade practices.  NMSA § 57-12-3.  The UPA then creates a private right of action for any person who suffers a loss due to "a method, act or practice declared unlawful by the [UPA]."  § 57-12-10(B).  Therefore, the only private right of

action created by the UPA is for losses caused by unfair or deceptive trade practices or by unconscionable trade practices, the two types of activity specifically declared unlawful in Section 57-12-3.  Where a statute explicitly creates a private right of action for certain conduct, it would be contrary to the statute's legislative purpose to imply such a right of action for other conduct not mentioned in the statute.  *See, e.g., Olmsted v. Pruco Life Ins. Co. of New Jersey,* 283 F.3d 429, 435 (2d Cir. 2002) (where one statutory provision does not use rights-creating language, and is part of a statute that provides for certain remedies and explicitly creates a private right of action to enforce other sections of the statute, no implied private right of action exists to enforce the provision missing the rights-creating language).  Therefore, Plaintiff's claim for violation of the asserted  requirement of good faith and fair dealing, brought as a separate claim under the UPA, will be dismissed.

**Count III – Conspiracies in Restraint of Trade:**  As was noted briefly above, Plaintiff purports to bring this claim under the UPA, but cites to NMSA § 57-1-1 and alleges a conspiracy in restraint of trade.  The Court will therefore address this Count as a claimed violation of New Mexico's Antitrust Act, NMSA §§ 57-1-1 to -19.  Plaintiff's claim under this Count may be summarized as follows:  Sandia conspired with several of its employees to drive Plaintiff out of business and have those employees' new company, Defendant Defiant Technologies, become the licensee of the same technology Plaintiff had licensed from Sandia.  The gravamen of this Count, therefore, is that Sandia and its co-conspirators attempted to harm the market for the technology Plaintiff was developing, by having Plaintiff displaced as the developer of that technology.  Plaintiff maintains that where a party "uses predatory tactics to eliminate competition, which has an adverse effect on the marketplace, such practices may be considered an unreasonable restraint of trade."  [Resp. p. 19]  According to Plaintiff, that is exactly what happened here.

Even if the Court accepts all of Plaintiff's assertions as true, summary judgment must be granted on this claim. New Mexico's version of the antitrust act is patterned after a federal statute, 15 U.S.C. § 1. *Clough v. Adventist Health Systems, Inc.*, 780 P.2d 627, 630 (N.M. 1989). As such, New Mexico's statute is to be construed in the same manner as the federal statute has been construed by the federal judiciary. *Id.* Under federal case law, it is not sufficient for a party to prove, as Plaintiff claims to have done in this case, that the defendants have conspired to harm the plaintiff's business or to drive the plaintiff out of business; instead, the plaintiff must show there is actual or potential harm to competition in a specific market. *See, e.g.*, *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993) (to prove antitrust claim, it is not enough for plaintiff to prove it has been harmed as an individual competitor; plaintiff must also show the challenged action has had an actual adverse effect on competition as a whole in the relevant market); *Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 179-80 (S.D.N.Y. 2006) (antitrust laws were enacted to protect competition, not individual competitors; this means plaintiff must show the challenged action had an adverse effect on competition as a whole, not just on plaintiff as a competitor).

In this case, Plaintiff's arguments address only the harm or threatened harm Plaintiff has suffered as a result of Sandia's alleged conduct. Plaintiff has made no effort at all to explain what the relevant market is, or how competition in that market will be reduced if Plaintiff is replaced in the market by Defiant. Plaintiff's conclusory assertion that the market will be harmed if one of the competitors – namely Plaintiff – is driven out of it, is not sufficient. In fact, at least some of Plaintiff's complaints in this case concern the fact that Sandia is allegedly attempting to increase, rather than decrease, competition in the market; if Sandia does license its technology to Defiant or other entities, and those entities compete with Plaintiff to build and sell detection systems, there will be more competition in the market. While it is true that Plaintiff may be

harmed by that increased competition, that type of harm is not an antitrust injury. *See id.* In sum, Plaintiff's attempt to protect its position as the sole licensee of certain Sandia technology cannot be the basis of a claim under Section 57-1-1. Since Plaintiff has failed to introduce any facts at all concerning the relevant market, competition in that market, and how that competition will be harmed by Sandia's actions, summary judgment must be granted on the claim brought under New Mexico's antitrust statute.[1]     **Count IV – Unfair or Unconscionable Trade Practice:** Plaintiff's claim in Count IV is a standard UPA claim, alleging that Sandia engaged in unfair or deceptive trade practices, or unconscionable trade practices, in violation of the UPA. The specific actions complained of by Plaintiff in its brief include the following: (1) During the negotiation of the agreement between Sandia and Plaintiff, Sandia promised it would provide to Plaintiff technical information, drawings, and other material concerning an early prototype of a detector created by Sandia, called the "gold brick"; despite this promise, Sandia failed to turn over all of the material, provided some defective items, and failed to provide other material in a timely manner; and (2) a Sandia employee made misrepresentations to a potential investor, causing that investor to decide not to supply funds to Plaintiff.[2] The Court finds summary

---

[1]The Court notes Plaintiff's reliance on *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1346-47 (3d Cir. 1975). In that case, the Third Circuit did state that it does not matter whether the complainant in an antitrust case is only one merchant. However, the court went on to analyze whether elimination of that one merchant would have an anti-competitive effect on the relevant market. That is the main failing of Plaintiff's showing in this case--Plaintiff has attempted to show only that it will suffer adverse effects from Sandia's actions, rather than providing evidence of possible adverse impacts on competition in whatever relevant market might exist. Again, it must be noted that the state and federal antitrust laws exist to promote competition, not to protect competitors.

[2]Plaintiff is represented by competent counsel, and the summary-judgment record in this case is voluminous. The Court has therefore simply relied on the arguments in Plaintiff's brief in determining which factual allegations form the basis of Count IV. The Court has not endeavored to review the record to examine whether there are other facts that might support a UPA claim. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n. 7 (5th Cir.1992) (district court does not have a duty to sift through the record in search of evidence to support a party's opposition to

judgment should be granted on this claim, for two reasons.  First, the transaction between Plaintiff and Sandia is not the type of transaction to which the UPA applies.  Second, even if the UPA did apply, the actions alleged by Plaintiff do not constitute violations of the UPA.

The UPA applies to the sale, lease, rental, or loan of goods or services, or to the extension of credit or collection of debts.  §§ 57-12-2(D), (E).  The transaction between Plaintiff and Sandia does not fit readily into any of those categories.  As part of the transaction, Sandia licensed to Plaintiff the right to use technology previously developed by Sandia to produce a commercially viable apparatus that would be capable of detecting airborne hazardous substances.[3]  In addition, the transaction required Plaintiff to pay an annual licensing fee for the use of Sandia's technology, and granted Sandia certain royalty rights if Plaintiff successfully developed a commercial product and was able to make sales of that product.  Significantly, the agreement also gave Sandia a small amount of stock in Plaintiff, making Sandia in effect a part-owner of Plaintiff.  For its part, in addition to the license to use Sandia's technology, Sandia agreed to provide to Plaintiff "copies of existing information and materials including, but not limited to, drawings, schematics, masks, sketches and written materials" pertaining to Sandia's "gold brick" device.[4]  [*See* "gold brick" letter, attached as exhibit to several briefs, for example, Exh. 2, Doc. 188]  Rather than a sale or lease of goods or services, therefore, the agreement

summary judgment; party opposing the motion must point out evidence in the record that creates an issue of fact).

[3]The Court has not attempted to state the exact name or function of the apparatus, as it is enough to understand its purpose in general terms.  In addition, the Court understands the agreement was not limited to this apparatus; however, that has been the focus of the parties' dispute and this lawsuit.

[4]The Court recognizes the parties do not agree whether Sandia had a contractually binding obligation to provide this information to Plaintiff.  It is not necessary to decide that question for purposes of this opinion; the Court will simply assume such an obligation was part of the agreement between the parties.

7

between the parties is an agreement to allow Plaintiff to use Sandia's technology to engage in a profitable enterprise, with both Plaintiff and Sandia standing to benefit as a result.  Such a license of technology is a different type of transaction than a sale, lease, rental, or loan.  *See, e.g, Grogan v. New Mexico Taxation and Revenue Dep't,* 62 P.3d 1236, 1243 (N.M. App. 2002) (distinguishing between a license and a lease); *Berthold Types Ltd. v. Adobe Sys., Inc.*, 101 F.Supp.2d 697, 698 (N.D. Ill. 2000) (law of sales does not apply to licensing, as license does not transfer title).  It is rather merely a promise by the licensor not to sue the licensee for use of the technology or process.  *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert  & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987).

Plaintiff contends that under the agreement, and particularly the "gold brick" letter, Sandia was obligated to provide information and materials about the "gold brick," and this obligation constitutes a sale of goods or services.  However, there is nothing in the "gold brick" letter denoting the provision of the information and other materials as a sale in exchange for consideration.  Instead, if Sandia was obligated by that letter to provide anything, it was as part of the licensing transaction; providing the information and materials would facilitate Plaintiff's use of the technology it was entitled to use under the license.  The only concrete monetary consideration present in the agreement between the parties is the annual fee Plaintiff was required to pay for the license of the technology; there is no indication this fee was intended in part to pay for the transfer of the information and materials discussed in the "gold brick" letter.  In sum, including the "gold brick" letter as part of the agreement between the parties merely makes the contents of the letter part of the licensing transaction between those parties; it does not convert the agreement into a sale, lease, or rental of goods or services.  The agreement, involving a licensing of technology rather than a sale or lease of technology, is simply not the type of transaction the New Mexico Legislature intended to cover when it enacted the UPA.  *See, e.g.,*

8

*Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991) (UPA mainly governs misleading trade identification, or false and deceptive advertising); *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.,* 113 P.3d 347, 353 (N.M.App. 2005) (UPA's purpose is to serve as consumer protection legislation, and UPA therefore gives standing only to buyers of goods or services).

Even if the UPA does apply to the technology-licensing transaction between the parties, summary judgment would still be appropriate in this case.  The unfair or deceptive trade practices provision of the UPA has four elements:  (1) a false or misleading statement or representation; (2) knowingly made in connection with the sale, lease, rental, or loan of goods or services; (3) made in the regular course of trade or commerce; and (4) of a type that may, tends to, or does deceive or mislead any person.  *Stevenson, supra*, 811 P.2d at 1311.  One of Plaintiff's contentions is that Sandia promised, in the "gold brick" letter, to provide information and other materials, and that Sandia then failed to fulfill its obligations under that letter, rendering the promises in the letter false.  However, in order to constitute an actionable misrepresentation under the UPA, the misleading statement or representation must have been "knowingly made" at the time it was issued.  *Id.*  This means the party must have been "actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading."  *Id.*, 811 P.2d at 1312.  It is not enough that one party to an agreement promises to do something and subsequently fails to fulfill that promise.  *Id.*  Plaintiff, therefore, was required in this case to produce some evidence tending to show that David Goldheim, the Sandia employee who authored the "gold brick" letter, knew or should have known that Sandia would not in fact provide the information and materials discussed in the letter at the time he wrote it.  Plaintiff has not done so.  Instead, the only evidence is that the "gold brick" letter was written, and subsequently there has been some dispute

9

about whether that letter contains any binding requirements and, if so, whether those requirements have been met.  This is nothing more than a garden-variety breach-of-contract issue, and it does not implicate the UPA.  *See Stevenson* (subsequent failure to fulfill contract cannot be basis of UPA claim, absent evidence of knowing misrepresentations made at time parties entered into contract).

The other alleged misrepresentations relied on by Plaintiff to support Count IV concern statements made by a Sandia employee named Duane Lindner.  A potential investor in Plaintiff, Kevin Fong, telephoned Mr. Lindner as part of his "due diligence" efforts.  [Sandia MSJ, Doc. 198, Exh. 1, Fong depo. p. 64]  Mr. Lindner was "cautious about what he said" about Plaintiff, and led Mr. Fong to believe there were "limits" put on Mr. Lindner as to what he could say about Plaintiff.  [*Id.*]  This in turn caused Mr. Fong to believe there was some type of disagreement between Sandia and Plaintiff, or perhaps legal action.  [*Id.*, p. 68]  Mr. Fong then spoke with a high-level Sandia employee, Mr. VanDevender, who assured Mr. Fong that as of the date of the conversation, August 2004, there were no problems between Sandia and Plaintiff.  [*Id.* p. 76]

The Court is at a loss to discern how Mr. Lindner's statements to Mr. Fong could be construed as a violation of the UPA.  First, the statements were not made to a buyer or potential buyer of goods or services, and therefore were not made in connection with a sale  of such goods or services; Mr. Fong, in attempting to decide whether or not to invest in Plaintiff, was not seeking to acquire goods or services.  *See, e.g., Santa Fe Custom Shutters, supra*, 113 P.3d at 352 (UPA contemplates a plaintiff who seeks or acquires goods or services and a defendant who provides goods or services).  Second, even if a decision to invest in a company could be considered an attempt to purchase goods or services, in answering Mr. Fong's questions about Plaintiff, Mr. Lindner was not acting as a provider of those goods or services; he was approached as a third party unrelated to the potential investment transaction between Mr. Fong's company

10

and Plaintiff.  *See id.* (proper UPA defendant is a person who provides goods or services).  Third, there is no evidence that Mr. Lindner made any misrepresentations to Mr. Fong, because there is no evidence that he was not in fact limited in what he could say about Plaintiff.[5]  Plaintiff itself has peppered the record with evidence of tension between certain Sandia employees and certain officers and employees of Plaintiff, indicating that the conclusion drawn by Mr. Fong, that at some time there was tension or disagreement between Sandia and Plaintiff, was accurate. Therefore, even if Mr. Lindner, instead of expressing caution, had come right out and told Mr. Fong there was some disagreement or tension between the two parties, that statement would not have been actionable under the UPA because it would not have been a misrepresentation.  In sum, no viable claim under the UPA can result from Mr. Lindner's statement to Mr. Fong informing him, in effect, "I can't talk about that," even if the statement did, as Plaintiff alleges, cause Mr. Fong to have doubts about Plaintiff's relationship with Sandia.

Based on the only factual allegations discussed in Plaintiff's brief, Plaintiff has failed to produce evidence sufficient to sustain a claim under the UPA.  Summary judgment must therefore be granted on Count IV.[6]

**Conclusion**

---

[5]Plaintiff argues that Mr. Lindner should have simply referred Mr. Fong to Mr. VanDevender immediately, rather than indicating he was limited in what he could say.  The UPA does not impose such an affirmative duty .

[6]Even if the Court did not limit its discussion to the allegations specifically discussed by Plaintiff, the result would be the same.  The other factual allegations in the amended complaint concern events, such as allegedly unfounded claims that Plaintiff had not satisfied its obligations under the agreement as well as alleged attempts to wrongly license Plaintiff's exclusive rights to other companies, that occurred long after the agreement was entered into.  They are therefore no more than possible breaches of contract occurring subsequent to the original exchange of promises.  *See Stevenson, supra*, 811 P.2d at 1311-12.  Furthermore, Plaintiff has made no attempt to establish that it lacked knowledge, ability, experience, or capacity, and was accordingly taken advantage of by Sandia, and has thus not met the requirements for establishing a claim under the "unconscionable trade practices" provision of the UPA.  § 57-12-2(E).

The UPA does not contain a cause of action for violation of a public policy of good faith and fair dealing.  In addition, Plaintiff has presented no evidence of any impact on competition in a particular market as a result of Sandia's alleged efforts to "depose" Plaintiff as a licensee and work out a licensing agreement with Defiant instead.  Finally, the transaction between the parties is not governed by the UPA, and Plaintiff has not brought to the Court's attention an issue of fact as to whether a violation of the UPA occurred.  For these reasons, Sandia's motion for summary judgment on Counts II, III, and IV will be granted.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion for partial summary judgment filed by Defendant (Doc. 198) be, and hereby is, GRANTED.  This is not a final, appealable order, as it does not dispose of all claims and counterclaims present in this case.

Dated this 26th day of July, 2007.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE