# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

_____

**NANODETEX CORPORATION,**

    Plaintiff,

v.                                                                                                                                                                           Civ. No. 05-1041 BB/LAM

**SANDIA CORPORATION, DEFIANT
TECHNOLOGIES, RONALD MANGINELL, DOUG
ADKINS, and PATRICK LEWIS,**

    Defendants;

**SANDIA CORPORATION,**

    Defendant-Counterclaimant,

v.

**NANODETEX CORPORATION, ALAN P.
SYLWESTER, and ANGELO L. SALAMONE,**

    Counterdefendants;

**DEFIANT TECHNOLOGIES,**

    Defendant-Counterclaimant,

v.

**NANODETEX CORPORATION, ALAN P.
SYLWESTER, and ANGELO L. SALAMONE,**

    Counterdefendants.

## MEMORANDUM OPINION AND ORDER

    This matter is before the Court for consideration of a motion for summary judgment (Doc. 199) filed by Defendant Sandia Corporation ("Sandia"). The motion addresses Counts V and VI of Plaintiff's amended complaint; these counts were brought against Sandia only and not

against any other Defendant.  Having reviewed the submissions of the parties and the applicable law, the Court finds the motion should be granted and Plaintiff's claims under these counts should be dismissed.

Plaintiff and Sandia entered into a business agreement, the exact terms of which are in dispute.  After Sandia notified Plaintiff of alleged breaches of the agreement, Plaintiff filed this lawsuit against Sandia and other Defendants.  Count V of the amended complaint alleges a common-law claim of tortious interference with business relationships; Count VI alleges another common-law claim, for corporate defamation.  Sandia has moved for partial summary judgment on both claims.

### Standard of Review

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986).  To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

**Count V – Tortious Interference With Business Relationships:** Plaintiff argues that Sandia interfered with Plaintiff's business relationships with two different parties – the Maxim Group, which was planning to conduct a "private placement" of $10 million in funding for Plaintiff, and Mayfield Ventures, an investment firm that was considering investing an unspecified amount of money in Plaintiff.[1] Neither Maxim nor Mayfield had entered into a formal business relationship or contract with Plaintiff; therefore, Plaintiff's claims regarding these entities are, in effect, that Sandia tortiously interfered with prospective contractual relationships or prospective business opportunities. *See, e.g., Fikes v. Furst*, 81 P.3d 545, 552 (N.M. 2003) (distinguishing between interference with an existing contract and interference with a prospective contract); *M & M Rental Tools, Inc. v. Milchem, Inc.*, 612 P.2d 241, 244-46 (N.M. App. 1980) (recognizing tort of interference with prospective contractual relations, where there has been interference with a business opportunity that has not yet been finalized with a contract).

Under New Mexico law, a person who "intentionally and improperly interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation... ." *Restatement (2d) Torts*, § 766(B). An improper interference can be the result of either an improper motive for the alleged tortfeasor's actions, or an improper means employed in those actions. *Los Alamos Nat'l Bank v. Martinez*

---

[1] The amended complaint also mentions the possibility that Sandia interfered with potential Israeli customers for Plaintiff's products. However, Plaintiff presented no argument or evidence concerning this aspect of Count V, and the Court therefore considers it abandoned. *Cf. Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n. 7 (5th Cir.1992) (district court does not have a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; party opposing the motion must point out evidence in the record that creates an issue of fact). Moreover, Plaintiff has not contradicted the evidence in the record to the effect that no Sandia employee had a conversation with any Israeli official that could be considered a negative comment on Plaintiff. [*See* MSJ, Doc. 199, Exh. 3, attachment; Response to MSJ, Exhs. 64-66]

*Surveying Servs.*, 139 P.3d 201, 206 (N.M. App. 2006). Courts in New Mexico are not as willing to protect interests in prospective contractual relations as they are to prevent interference with existing contracts. *Fikes, supra; Anderson v. Dairyland Ins. Co.*, 637 P.2d 837, 840 (N.M. 1981). For that reason, a plaintiff claiming the loss of a prospective contractual relation, as opposed to an existing contract, must show that the sole motive for the defendant's action was to harm the plaintiff. *Fikes, supra* (discussing cases); *Los Alamos Nat'l Bank, supra*. A prospective-relations plaintiff must also prove there was an "actual prospective contractual relation which, but for the ... interference, would have been consummated." *Anderson, supra*; *see also Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 455 fn. 11 (9th Cir. 1994) (elements of tortious interference with business expectancies include the existence of a valid business expectancy as well as an intentional interference inducing or causing a breach or termination of the expectancy). For the reasons discussed below, Plaintiff in this case has not raised an issue of fact as to whether Sandia's actions caused the loss of a specific prospective business relationship; whether Sandia's sole (and therefore improper) motive for its actions was to harm Plaintiff; or whether Sandia employed an improper means when it acted as it did.

    As noted above, Plaintiff's first argument is that Sandia improperly interfered with a $10 million "private placement" that was almost finalized with the Maxim Group. According to Plaintiff, two Sandia employees were present at a meeting of Plaintiff's shareholders in February 2005 when the impending private placement by Maxim was discussed. Shortly thereafter, they allegedly induced Sandia to begin demanding a demonstration of a working prototype of the device Plaintiff was working on, a portable device that could detect hazardous chemicals and other substances in the air. When Plaintiff resisted this demand, maintaining the working-prototype requirement had already been met, Sandia in June 2005 notified Plaintiff that the requirement had not been met and Plaintiff was in breach of the license agreement between the

parties. This notification, according to Plaintiff, made it impossible for Maxim to continue with the planned private placement, and constituted an improper interference with the prospective business relationship between Plaintiff and Maxim.

The Court does not agree that any evidence presented in the summary-judgment record supports Plaintiff's position. There is no evidence in the record concerning the details of the Maxim private placement; there is no explanation of what the "placement" was, how it would have resulted in $10 million of funding, or how imminent and certain such funding would have been.[2] Furthermore, there is no evidence that Maxim backed out of the planned private placement arrangement as a result of Sandia's actions. As best the Court can determine without more evidence from Plaintiff, the Maxim Group was to use its best efforts to market Plaintiff's stock to unnamed customers, and either Maxim or Plaintiff decided not to complete the private-placement process for reasons that do not appear in the summary-judgment record, except in argument of counsel. Absent evidence that Maxim was dissuaded from buying Plaintiff's stock, assisting Plaintiff in selling its stock, or otherwise investing in Plaintiff due to the dispute with Sandia over the license, Plaintiff has failed to raise an issue of fact as to whether Sandia's actions caused Maxim to decide not to enter into a business transaction with Plaintiff. Furthermore, if as it appears Maxim was merely acting as an agent in an attempt to find as-yet-unidentified investors on behalf of Plaintiff, those potential investment transactions are too non-specific and too far removed from realization to support a claim for tortious interference with a business

---

[2] In fact, Plaintiff's response brief to the specific motion at issue in this opinion contains no attachments that mention Maxim at all; the only exhibit in the entire record that appears to concern Maxim is an exhibit, number 86, to Document 278. This exhibit is a draft proposal under which Maxim appears to be offering to act as an agent for an offering of Plaintiff's stock for sale. This exhibit does not identify any potential buyers for the stock, or indicate the sale of stock is imminent. Therefore, it is not evidence of an actual, specific business transaction that was terminated as a result of Sandia's actions. At best, it indicates Plaintiff or Maxim decided not to proceed with a sale of stock that might, or might not, have produced buyers for that stock.

relationship.  *See, e.g., M & D Cycles, Inc. v. American Honda Motor Co., Inc.*, 208 F.Supp.2d 115, 119 (D. N.H. 2002) (tortious interference claim may not be based solely on potential relationship with consumers in a given market).

Similarly, with respect to the potential investment by Mayfield Ventures, Plaintiff has failed to raise an issue of fact as to whether Sandia's actions caused Mayfield to decide against the investment.  Plaintiff points to several pieces of evidence:  first, Kevin Fong of Mayfield was quite interested in undertaking the possible investment; second, while investigating the potential investment, Mr. Fong spoke with Duane Lindner, a Sandia employee; third, Mr. Fong subsequently informed Plaintiff that Sandia's references had not been "all that satisfactory"; and fourth, Mayfield decided not to go through with the investment.  [Resp., Exhs. 60, 61, 63; MSJ unnumbered Exh. 2, Fong depo. pp. 64-65]  Standing alone, this evidence might raise an issue of fact as to whether Mr. Lindner's conversation with Mr. Fong was the cause of Mayfield's decision not to enter into the investment transaction with Plaintiff.  However, this evidence does not stand alone; the record contains evidence concerning the specific statements Mr. Lindner made, and the specific reasons Mr. Fong decided to forego the potential investment in Plaintiff, and this evidence must be considered by the Court.  *See Walnut Grove Partners, L.P. v. American Family Mut. Ins. Co.,* 479 F.3d 949, 952 (8th Cir. 2007) (assessing evidence in the light most favorable to the nonmoving party does not mean the district court must ignore other evidence).

Mr. Fong testified at his deposition that Mr. Lindner was cautious about what he said about Plaintiff, and led Mr. Fong to believe there were limits to what he could say about Plaintiff. [MSJ unnumbered Exh. 2, p. 64]  Mr. Lindner also stated that Plaintiff would take the technology to a higher level for commercial customers, and Sandia would do so for government customers. [*Id.* p. 65]  Mr. Lindner was "quite complimentary" about the work Plaintiff was doing, but from

the conversation Mr. Fong "gathered" there was some disagreement, or possibly legal action, between Sandia and Plaintiff.  [*Id.* p. 68]  Mr. Fong then spoke with Pace VanDevender, another high-level Sandia employee, who reassured Mr. Fong concerning the relationship between Sandia and Plaintiff.  [*Id.* p. 79-80]  After that conversation, the conversation with Mr. Lindner was no longer "a large topic" in Mr. Fong's mind, and the information Mr. Fong had received from Mr. VanDevender and Mr. Lindner was not a decisive factor in the refusal to invest in Plaintiff.  [*Id.* p. 96]  This evidence, which is not contradicted by any other information in the record, means there is no issue of fact as to whether Mr. Lindner's statements to Mr. Fong caused or induced the Mayfield Fund's decision not to enter into the proposed business relationship with Plaintiff.[3]  *See Tatum v. Philip Morris Inc.*, 809 F.Supp. 1452, 1468 (W.D. Okla. 1992) (where none of three prospective employers planned to hire plaintiff, and former employer's statements were irrelevant to those decisions, those statements did not support tortious interference claim), *aff'd without opinion*, 16 F.3d 417 (10th Cir. 1993); *American Cable Tech. Servs., Inc. v. AT & T Corp.*, 140 F.Supp.2d 1026, 1031-32 (W.D. Mo. 2001) (cancellation of contract based on third party's own investigation, following complaint to third party by defendant, did not support plaintiff's tortious interference claim), *aff'd*, 23 Fed.Appx. 625 (8th Cir. 2002) .

     Even if a genuine issue of material fact might exist as to the causation issue, there is no such fact issue as to whether Sandia's sole motivation for its actions was to harm Plaintiff.  As discussed above, in cases of alleged interference with prospective, as opposed to existing, contracts, the only motivation for the defendant's actions must have been an intention to harm the plaintiff.  *See Fikes v. Furst*, 81 P.3d at 552; *Los Alamos Nat'l Bank*, 139 P.3d at 206-07.  As

---

[3] Mr. Lindner's conversation with Mr. Fong is the only action by Sandia argued by Plaintiff as constituting interference with the prospective business relationship with the Mayfield Fund.  Therefore, that is the only action the Court need address.  *Cf. Skotak v. Tenneco Resins, Inc.*, *supra*, 953 F.2d at 916 n. 7.

Plaintiff itself argues, Sandia's alleged motive for declaring Plaintiff in breach of the license agreement was to facilitate the transfer of Plaintiff's exclusive licenses to Defendant Defiant Technologies, a potential competitor of Plaintiff. Thus, even under Plaintiff's own argument, Sandia's sole motive was not to harm Plaintiff, but was to assist a competitor that Sandia favored in the race to develop and improve on Sandia's technology. Such competitive motives are not impermissible in a tortious-interference case such as this one, involving only prospective contracts rather than existing ones. *See, e.g., M & M Rental Tools, supra*, 612 P.2d at 246 (stealing potential customer who had called competitor's office did not establish improper motive).

Similarly, the evidence that Mr. Lindner merely was careful what he said when he spoke to Mr. Fong about Plaintiff, and indicated he was limited in what he could say about Plaintiff, is not evidence of an improper motive. Being careful and hesitating to talk about a topic does not show any type of vindictiveness or desire to harm an entity.

Finally, there is no evidence of an improper means being utilized by Sandia generally or Mr. Lindner particularly. An "improper means" for purposes of the tortious-interference cause of action has been defined to include both tortious and "predatory" behavior, with examples such as violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood. *See Los Alamos Nat'l Bank*, *supra*, 139 P.3d at 207; *M & M Rental Tools, supra*, 612 P.2d at 246. What Mr. Lindner did was to refuse to speak openly about Plaintiff; instead, he was careful and indicated he was limited in what he could say, which led Mr. Fong to believe there might be litigation or some other problem between Sandia and Plaintiff. This is not close to tortious or predatory behavior. As to Sandia's accusation that Plaintiff had not met the "prototype" requirements of the license agreement, businesses regularly accuse each other of breaching contracts. To constitute predatory behavior, such an accusation of

breach must be so completely unfounded as to, in effect, shock the conscience of a court. *Cf., e.g., Knight v. Snap-On Tools Corp.*, 3 F.3d 1398, 1402 (10th Cir. 1993), *citing Quintana v. First Interstate Bank*, 737 P.2d 896, 899 (N.M. App. 1987) (breach of a contract with a third party is not the type of improper means that has been held to support claim for tortious interference with contract). Otherwise, every case involving a simple breach of contract could be converted into a tortious-interference claim. In this case, even viewing the evidence in the light most favorable to Plaintiff, it is obvious there was a dispute between Plaintiff and at least some employees of Sandia, as to whether the working-prototype requirement had been met. Sandia's notice to Plaintiff that the licensing agreement had been breached, therefore, cannot be considered predatory behavior that could support a tortious-interference claim.

**Count VI – Corporate Defamation:** Plaintiff maintains that Sandia published defamatory material to third parties. The specific defamatory statements relied on by Plaintiff are contained in an "issue card" sent by Sandia to the offices of a New Mexico Congressional Representative and a New Mexico Senator. This "issue card" was created at the end of May or in early June 2005, and set out Sandia's arguments pertaining to the on-going dispute with Plaintiff over demonstration of a working prototype. The issue card stated that Plaintiff had ignored the requirement that a working prototype be created prior to September 1, 2004, and was currently stonewalling[4] Sandia's repeated requests for a demonstration of a working prototype. Plaintiff argues these statements are false and defamatory. Plaintiff also argues the false statements caused actual damage to Plaintiff, because Plaintiff's efforts to obtain additional venture-capitalist funding were "dependent on its corporate reputation; namely, its status as a Sandia licensee in good standing."

---

[4]This is the Court's characterization of Sandia's statements; Sandia did not use the word "stonewalling" in the issue card.

9

Although Sandia argues in response that the statements made in the issue card were true and therefore cannot be defamatory, the Court need not decide that question at this time.[5] Summary judgment must be granted on this claim because Plaintiff has presented no evidence of actual damages, and as Plaintiff acknowledges the existence of actual damages is an essential element of a defamation claim in New Mexico. *See Poorbaugh v. Mullen*, 653 P.2d 511, 520 (N.M.App.1982); NM UJI 13-1002(B)(8). Plaintiff claims its ability to obtain venture capital was harmed by the dissemination of the issue card; however, there is no evidence that any potential investor was ever aware of the issue card, came into possession of an issue card, or was informed of the contents of an issue card. There is also no evidence that any potential investor was dissuaded from providing funds to Plaintiff because of the issue card. To raise an issue of fact about the existence of actual damages, it is not enough for Plaintiff to show that if an investor had become aware of the contents of the issue card, the investor would likely have been discouraged from pursuing a financial relationship with Plaintiff. Instead, if Plaintiff is to base its claimed damages on lost venture-fund capital, Plaintiff must provide evidence that a specific investor actually became aware of the issue card's contents and refrained from pursuing the investment as a result. Otherwise, Plaintiff has established only speculative, potential harm rather than actual damages. *See, e.g., Restatement (2d) Torts*, § 575, Comment b (1977) (special harm is loss of something having economic or pecuniary value); *Rall v. Hellman,* 726 N.Y.S.2d 629, 631 (1st Dept. 2001) (plaintiff failed to adequately allege special damages; there was no allegation that plaintiff actually lost a single client as a result of e-mail; allegation that e-mail caused plaintiff to make poor presentation to potential employers was insufficient). Since

---

[5]The questions of whether there are genuine issues of material fact as to the prototype requirement, whether the requirement was met, and if not whether Sandia's own breaches of the license agreement were the cause of that failure, will be central to resolution of Plaintiff's and Sandia's cross-motions for summary judgment on the breach-of-contract claim.

Plaintiff has failed to present any evidence of actual damages, summary judgment must be granted on the defamation claim.

### Conclusion

Based on the foregoing, Sandia's motion for partial summary judgment will be granted and Plaintiff's claims for tortious interference with business relationships and for defamation will be dismissed.

### ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion for partial summary judgment filed by Defendant (Doc. 199) be, and hereby is, GRANTED. This is not a final, appealable order, as it does not dispose of all claims and counterclaims present in this case.

Dated this 1st day of August, 2007.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE