**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

**NANODETEX CORPORATION,**

    Plaintiff,

v.                                                                                                             Civ. No. 05-1041 BB/LAM

**SANDIA CORPORATION, DEFIANT
TECHNOLOGIES, RONALD MANGINELL,
DOUG ADKINS, and PATRICK LEWIS,**

    Defendants;

**SANDIA CORPORATION,**

    Defendant-Counterclaimant,

v.

**NANODETEX CORPORATION, ALAN P.
SYLWESTER, and ANGELO L. SALAMONE,**

    Counterdefendants;

**DEFIANT TECHNOLOGIES,**

    Defendant-Counterclaimant,

v.

**NANODETEX CORPORATION, ALAN P.
SYLWESTER, and ANGELO L. SALAMONE,**

    Counterdefendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for consideration of two motions for partial summary

judgment (Docs. 196, 201) filed by Defendant Sandia Corporation ("Sandia"), as well as one

motion for partial summary judgment (Doc. 212) filed by Plaintiff and Counterdefendants. These motions address Count I of Plaintiff's amended complaint as well as the counterclaims raised by Sandia and Defendant Defiant Technologies ("Defiant"). Having reviewed the submissions of the parties and the applicable law, the Court finds all three motions should be Denied.

Plaintiff and Sandia entered into a business agreement, the exact terms of which are in dispute. After Sandia notified Plaintiff of alleged breaches of the agreement, Plaintiff filed this lawsuit against Sandia and other Defendants. Count I of the amended complaint alleges a claim of breach of contract against Sandia, and both Sandia and Defiant have asserted several counterclaims against Plaintiff and the individual Counterdefendants. Sandia has moved for partial summary judgment on Plaintiff's breach-of-contract claim, as well as its counterclaims for breach of contract and a declaratory judgment. In turn, Plaintiff and the individual Counterdefendants have moved for summary judgment on all counterclaims raised by Sandia and Defiant.

**Standard of Review:** Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at minimum, an inference of

the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Sandia's Motion Concerning Count I:** When Sandia and Plaintiff entered into the contract at dispute in this case, several documents were signed on the same date. These documents included a License Agreement setting out the terms of the exclusive license of technology to Plaintiff, and a letter (the "gold brick" letter) containing a confirmation of Sandia's "intention" to provide Plaintiff copies of existing information concerning Sandia's prototype detection device, called the gold brick. This information was to consist of drawings, schematics, masks, sketches, and other materials. Plaintiff contends the gold brick letter is an enforceable contract, as it was part of the agreement between the parties, and claims Sandia violated the terms of the gold brick letter by failing to transfer in a timely manner all of the materials referred to in the letter. Sandia has moved for summary judgment on this portion of Plaintiff's breach-of-contract claim, raising two arguments: first, that the gold brick letter is not a binding agreement but was simply a gratuitous promise by Sandia; and second, that the gold brick letter is too indefinite to be a binding contract.

Sandia's first contention is easily addressed; there is clearly an issue of fact as to whether the gold brick letter was intended to be an enforceable part of the overall agreement between the parties, or merely an unenforceable promise. Sandia signed the gold brick letter on the same day the parties signed the license agreement. Furthermore, the letter and license agreement concern the same subject matter, the detector Plaintiff was planning to build using technology licensed

3

from Sandia. [Sandia MSJ, Exhs. 1 and 2] The law is clear that, depending on the surrounding circumstances, if two or more instruments are part of a single transaction and concern the same subject matter, they may be considered part of a single contract. *Espinosa v. United of Omaha Life Ins. Co.*, 137 P.3d 631, 635-36 (N.M.App. 2006); *Phillips Petroleum Co. v. McCormick*, 211 F.2d 361, 364 (10th Cir. 1954); *see also, e.g., In re Olympic Mills Corp.*, 477 F.3d 1, 14 (1st Cir. 2007) (in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract or instrument, even though they do not in terms refer to each other); 11 Richard A. Lord, *Williston on Contracts* § 30:26 at 239-42 (4th ed.1999) (same). Even though the gold brick letter was not signed by both parties but only by Sandia, the temporal and subject-matter juxtaposition between the license agreement and the gold brick letter is sufficient to raise an issue of fact as to whether the parties intended the gold brick letter to be a legally enforceable component of their agreement. In addition, there is evidence in the record, from an individual who testified he was involved in drafting the gold brick letter, to the effect that the main intent of the letter was to have a document that would allow Plaintiff to insure that Sandia would provide the technology necessary to replicate the gold brick technology. [Doc. 248, Exh. 2, Frye-Mason depo. p. 115] This testimony alone raises an issue of fact as to whether the gold brick letter was intended by the parties to be an enforceable component of the license agreement.[1] *See Young v. Thomas*, 604 P.2d 370, 372 (N.M. 1979)

---

[1] Sandia points to the fact that the license agreement contains an integration clause stating that the license agreement and the exhibits thereto constitute the entire agreement between Plaintiff and Sandia. [Sandia MSJ, Exh. 1, p. 16] However, the presence of such an integration clause at most raises a rebuttable presumption that the agreement is an integrated agreement excluding all possible other agreements, and does not conclusively establish that fact. *See, e.g.,*

4

(extrinsic evidence may be necessary to determine intent of parties to ambiguous agreement); *Krieger v. Wilson Corp.*, 131 P.3d 661, 670 (N.M.App. 2005) (summary judgment not appropriate where evidence of circumstances surrounding making of contract are in dispute).

Sandia's second argument is more persuasive, but ultimately fails to justify a grant of summary judgment. Sandia contends that even if the gold brick letter could be considered part of the agreement between the parties, or a separate contract in its own right, it is too vague and indefinite to be enforceable. Sandia argues that the second paragraph of the letter distinguishes "in-depth explanations" from "simple, clarifying questions" concerning the gold-brick material Sandia is to convey to Plaintiff, but fails to provide any way to differentiate the two concepts, rendering the requirements of the paragraph unenforceable. [Sandia MSJ Brief, p. 15] Even if that were an accurate characterization, however, it ignores the fact that the first paragraph of the gold brick letter refers specifically to "copies of existing information and materials including, but not limited to, drawings, schematics, masks, sketches and written materials" pertaining to the prototype called the "gold brick." [Sandia MSJ Exh. 2] It is undisputed that both Sandia and Plaintiff had personnel who were intimately familiar with the gold brick, and who would presumably be able to describe just what materials the gold brick letter was referring to in the

---

*Restatement (Second) Contracts*, § 209 and cmt. b (contract may contain an explicit integration clause, but such declaration may not be conclusive); *Union Bank v. Swenson,* 707 P.2d 663, 665 (Utah1985) (all relevant evidence is admissible on the threshold issue of whether the writing was adopted by the parties as an integration of their agreement, even if the writing clearly states it is a complete recitation of the parties' agreement); *cf. Ruggles v. Ruggles*, 860 P.2d 182, 199 (N.M.1993) (extrinsic evidence is admissible to explain the terms of an integrated agreement, even if the agreement contains an integration clause). Here, the existence of the gold brick letter, signed on the same date as the license agreement and concerning the same subject matter, raises an issue of fact as to whether the parties truly intended the integration clause to be effective and to make the license agreement an integrated agreement excluding all other possible obligations.

first paragraph.[2] Given the potential availability of this extrinsic evidence, the fact that the letter itself does not specify a list of the information to be provided does not render the obligation too indefinite to be enforced. Instead, the missing specific terms can be supplied by the Court (or, perhaps, the jury), if there is evidence from which to make such an interpretation. *See, e.g., Restatement (Second) Contracts* § 204 (even an essential term that is omitted from a contract may be supplied by the court, if such term is reasonable under the circumstances); *cf. C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 245-46 (N.M. 1991) (jury may reform contract based on testimony regarding intent of negotiators). Summary judgment, therefore, cannot be granted on the ground urged by Sandia, that the gold brick letter's requirements are too vague to be enforceable.[3]

The above discussion establishes that there is a genuine issue of material fact as to whether Sandia breached at least one aspect of the agreement between the parties. Therefore, it

---

[2] In fact, included in the summary-judgment record is at least one list describing gold-brick information Plaintiff had already received by August of 2002, as well as information still required from Sandia. [Individual Defts. MSJ, Doc. 187, Exh. 4]

[3] It should be noted that in the brief in chief, Sandia did not argue that as a matter undisputed fact it did satisfy all requirements imposed by the gold brick letter. Sandia argued only that the gold brick letter was not enforceable. In the reply brief, however, Sandia included a section discussing whether Sandia fulfilled the gold-brick requirements in a timely manner. Since this discussion was raised for the first time in the reply brief, the Court will not consider it as a basis for granting summary judgment. *Beaird v. Seagate Techn., Inc.*, 145 F.3d 1159, 1164-65 (10th Cir. 1998) (in addressing motion for summary judgment, court should not consider new material contained in the reply brief). Furthermore, if the Court were to consider the issue, denial of summary judgment would still be appropriate. As discussed in a subsequent section of this opinion, there are issues of fact as to whether Sandia was supposed to volunteer information to Plaintiff instead of waiting for a specific request; as to why some information was not supplied for several years after the license agreement was finalized; and as to whether the delayed information had any connection at all to Plaintiff's alleged failures to meet certain performance milestones. These issues of material fact would preclude a grant of summary judgment.

does not appear to be necessary to address the other possible breaches of contract discussed by Sandia in its motion. However, the Court notes there appear to be issues of fact as to what form of satisfactory evidence of a working prototype product was required of Plaintiff under the license agreement, and as to whether Sandia's possible failure to meet the requirements of the gold brick letter might have contributed to Plaintiff's alleged inability to satisfy the "working prototype" performance milestone. These are issues more properly addressed by a fact-finder rather than decided at the summary-judgment stage. Sandia's motion for summary judgment on Plaintiff's breach-of-contract claim will therefore be denied.

**Sandia's Motion Concerning Its Counterclaims:** Sandia filed a counterclaim requesting a declaratory judgment allowing it to terminate Plaintiff's exclusive license to the technology referenced in the original license agreement, or to reduce the license from an exclusive license to non-exclusive status. Sandia also filed a counterclaim seeking damages for alleged breaches of contract committed by Plaintiff. Both counterclaims rest on Sandia's contention that Plaintiff has violated certain terms of the license agreement. The Court must therefore determine whether there is a genuine issue of fact as to whether Plaintiff has committed the breaches of contract specified by Sandia.

Sandia contends that Plaintiff failed to satisfy the first performance milestone established by the license agreement. This milestone required Plaintiff to obtain $500,000 in first-round equity funding by March 1, 2002. [Sandia MSJ on Count I, Exh. 1, Exh. C to license agmt.] According to Sandia, Plaintiff defaulted on this milestone because even though Plaintiff had received a $500,000 check from an investor prior to that date, the check subsequently bounced. Even if the Court accepts this assertion as true, summary judgment would not be appropriate with

respect to this claim of breach.  The alleged default occurred in March 2002, yet Sandia continued to allow the exclusive license to remain in effect and to accept the benefits of that agreement (specifically, the yearly license payments) for years after the claimed breach.  [Doc. 248, Exh. 21, Goldheim depo. p. 51, noting Plaintiff was current on license payments as of July 27, 2005; Exh. 50, invoice and check for July 2006 license payment]  This conduct raises an issue of fact as to whether Sandia waived the requirement that the first round of funding be obtained by March 1, 2002.  *See, e.g., Cowan v. Chalamidas*, 644 P.2d 528, 529 (N.M. 1982) (if a party has knowledge of the other party's breach and continues to accept the benefits of the contract, that acceptance can constitute waiver of the right to terminate the contract based on the prior breaches).

   Sandia next points to performance milestone number four, which required Plaintiff to provide evidence of commercial sales of the detector in the amount of $50,000 in 2004, and $75,000 in 2005.  [Exh. C to license agmt.]  Summary judgment is not appropriate as to this performance milestone for two reasons.  First, the potential waiver-of-breach issue arises with respect to this milestone as well as the first-round-funding milestone.  Accepting as true the assertion that Plaintiff did not make commercial sales of $50,000 in 2004 and $75,000 in 2005, the fact remains that Sandia continued to accept license payments from Plaintiff in 2005 and 2006.  This raises an issue of fact as to whether Sandia waived this particular breach of the license agreement.  Furthermore, as discussed below in connection with the working-prototype milestone, there is a genuine issue of material fact as to whether Sandia failed to fully satisfy the requirements of the gold brick letter.  In turn, there is an issue of fact as to whether that alleged failure contributed to Plaintiff's inability to meet the commercial-sales goals of the license

8

agreement. For both of these reasons, the Court will not grant Sandia's request for summary judgment concerning the commercial-sales performance milestone.

Sandia's final contention in support of this motion is that Plaintiff failed to meet performance milestone number three, which requires Plaintiff to supply "satisfactory evidence of a working PROTOTYPE PRODUCT ... not later than September 1, 2004." [Exh. C to license agmt.] The merits of this issue have been hotly debated by the parties and form one of the crucial questions in this case. On the one hand, Plaintiff contends the license agreement does not require a demonstration of a working prototype, but merely satisfactory evidence that one exists. Plaintiff points to Sandia's demand for a demonstration as evidence that Sandia is bent on terminating Plaintiff's exclusive license to Sandia's technology. Plaintiff also points to evidence indicating that various Sandia officials have stated, at various times, that Plaintiff appears to have met the working-protoype requirement of the license agreement. Sandia, on the other hand, argues that any such statements made by its employees were based on Plaintiff's misrepresentations to those employees, and that it has a right to demand a demonstration of a working prototype because there is strong evidence pointing toward a conclusion that Plaintiff does not possess such a prototype.

The Court need not address the merits of the prototype issue for purposes of this summary-judgment motion. Plaintiff contends that if in fact it did not satisfy the working-prototype requirement of the license agreement, that failure was caused at least in part by Sandia's own failure to satisfy the requirements of the gold brick letter. As to that issue, the Court finds there is a genuine issue of material fact precluding summary judgment.

It is black-letter law that one party to a contract may not prevent the other party from performing an obligation under the contract, and then rely on that non-performance as the basis of a breach-of-contract claim. *See, e.g., Estate of Griego ex rel. Griego v. Reliance Standard Life Ins. Co.*, 997 P.2d 150, 156 (N.M.App. 2000) ("Each party to an enforceable agreement has a duty not to prevent performance by the other party."); Richard A. Lord, *Williston on Contracts* § 39:3 (Under the doctrine of prevention, "[i]t is a general principle of contract law that if one party to a contract hinders, prevents, or makes impossible performance by the other party, the latter's failure to perform will be excused."). There is evidence in the record showing that, for reasons that are disputed, the transfer of gold-brick information and technology did not occur in a timely manner and in fact took several years to complete (indeed it is disputed whether it has been completed). [*See, e.g.,* Doc. 188, Exh. 7, Cernosek depo. p. 214-15] Based on the present record it is unclear whether this delay was the fault of Sandia or Plaintiff. For example, there is evidence that Sandia did not volunteer information, but only responded to requests for such information from Plaintiff. [Doc. 248, Exh. 2, Frye-Mason depo. p. 257] This was despite the fact that Greg Frye-Mason, who was allegedly involved in drafting the gold brick letter, believed Sandia's responsibility was to volunteer all of the technical information necessary to replicate the gold brick. [*Id.* pp. 115, 256] There is also evidence, however, that Plaintiff knew if it wanted information from Sandia it might have to provide funds to Sandia to pay for the work needed to develop and transfer that information. [*Id.* p. 266] This is not a matter that can be resolved on summary judgment. Furthermore, it is also unclear whether the delay in obtaining this information caused Plaintiff to fail to meet the prototype requirement, or whether (as Sandia argues) the failure was entirely unrelated to that issue and instead was a result of Plaintiff's

difficulties in obtaining sufficient investor funding.  Given all of the uncertainty in the record, and viewing the evidence as a whole in the light most favorable to Plaintiff, the Court finds there are genuine issues of material fact as to whether Sandia's own actions may have caused Plaintiff's alleged failures to meet the working-prototype performance milestone.  Sandia's motion for summary judgment will therefore be denied.

**Plaintiff's Motion Regarding the Counterclaims of Defiant and Sandia:** Plaintiff's motion for summary judgment does not address the merits of any counterclaim.[4]  Instead, the sole ground asserted for the motion is Plaintiff's argument that Defiant and Sandia have failed to present any evidence of monetary damages resulting from the causes of action alleged as counterclaims.  Therefore, for purposes of this opinion, the Court will assume there is evidence in the record supporting every element of Defiant's and Sandia's counterclaims, except the element of monetary damages.

**Defiant's Counterclaims:**  Defiant's counterclaims against Plaintiff include claims for malicious abuse of process, defamation, tortious interference with prospective business relationships, prima facie tort, and civil conspiracy.  In support of the motion for summary judgment, Plaintiff makes the following arguments:  (1) Defiant is bound by the deposition testimony of Defendant Lewis, because Lewis was identified as Defiant's Rule 30(b)(6) witness concerning damages; (2)  Lewis made no claim for damages for malicious abuse of process, defamation, prima facie tort, or civil conspiracy, and therefore Defiant has abandoned those

---

[4] For ease of reference, the Court will refer only to "Plaintiff" in this section of the opinion, even though the motion was filed by the individual Counterdefendants as well.

Case 6:05-cv-01041-BB-LAM   Document 350   Filed 10/15/07   Page 12 of 18

claims; and (3) Lewis provided insufficient evidence of monetary damages as to any of the counterclaims. The Court disagrees with Plaintiff's arguments.

Initially, the Court finds Defiant is not bound by or restricted to Defendant Lewis' testimony concerning damages. As Defiant pointed out in its response, when Defiant proffered Lewis as its Rule 30(b)(6) witness at his deposition, Plaintiff rejected the opportunity to treat the deposition as a 30(b)(6) deposition and specifically recognized that Lewis would be testifying in his individual capacity. [Defiant Resp., Exh. 1, Lewis depo. p. 6] Therefore, Plaintiff cannot effectively argue that Defiant is bound by Lewis' testimony. To avoid this result, Plaintiff contends it changed its position during the Lewis deposition and began to question him as the Rule 30(b)(6) expert. However, the Court finds Plaintiff's counsel's statement in mid-deposition to be entirely ineffective to suddenly convert the deposition into a 30(b)(6) deposition. According to Plaintiff, its counsel asked the following question of Lewis: "And now that Mr. Burris indicates that you are the damages guy, I will ask you this as well. How has Defiant been damaged as a result of Nanodetex' conduct...?" Given the earlier explicit rejection of Lewis as a 30(b)(6) witness, and the insistence that he would be testifying in his individual capacity, it would be inequitable to now grant summary judgment on the basis of this vague statement by Plaintiff's counsel. *Cf. Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp.*, 441 F.Supp.2d 695, 722 n. 17 (M.D. Pa. 2006) (precluding party from producing other evidence of damages, when Rule 30(b)(6) witness could not answer question about damages, would be "particularly draconian" and would be more severe sanction than Federal Rules of Civil Procedure would allow). Thus Plaintiff's main arguments in favor of summary judgment, which

12

are based on Plaintiff's assumption that Defiant is limited to Lewis' testimony as to the damages it suffered, must fail.

It should be noted there are other reasons to deny Plaintiff's motion with respect to Defiant. For example, one of Defiant's counterclaims is for malicious abuse of process, and one element of damages for such a claim is the attorney's fees spent fighting the maliciously-filed lawsuit. *See, e.g., DeVaney v. Thriftway Marketing Corp.*, 953 P.2d 277, 290 (N.M. 1997) (in a malicious abuse of process case, "A plaintiff may recover the normal expenses of defending against the underlying claim."), *abrogated on other grounds, Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31 (N.M. 2007); *see also, e.g., Tri-State Hospital Supply Corp. v. U.S.,* 341 F.3d 571, 576 (D.C. Cir. 2003) (expenditures for legal defense traditionally make up a major component of the damages recoverable for abuse of process, relying on *Restatement (Second) of Torts*, 681(c)).

With respect to the defamation claim, Plaintiff simply argues that "Defiant makes no claim for damages arising from" the allegation of defamation, and has therefore effectively abandoned that claim. [Pltf. Brief, p. 15] This is simply another argument that Defiant is bound by Lewis' testimony at his deposition, an argument rejected above. In addition, Plaintiff has not attacked or provided evidence to contravene the substantive assertions in Defiant's counterclaim that Defiant's "corporate reputation has been damaged" by Plaintiff's allegedly defamatory statements, and that the defamatory statements were made "maliciously, with knowledge of their falsity or with reckless disregard for whether they were false." In New Mexico, a defamation claimant must show actual injury to its reputation, but it is not necessary to establish specific monetary injury. *See* N.M.U.J.I. 13-1002(B)(8); 13-1010 ("It is not necessary for plaintiff to

13

present evidence which assigns an actual dollar value to the injuries."); *Cowan v. Powell,* 856 P.2d 251, 252-53 (N.M.App. 1993) (plaintiff in defamation action was prevailing party even though jury awarded no monetary damages; actual injury to reputation is sufficient, even without evidence of monetary injury). Therefore even if, as Plaintiff argues, Defiant did not make a claim for monetary damages resulting from the alleged defamation, dismissal of that claim is not warranted as a result, given Plaintiff's implied concession (for purposes of this motion only) that Defiant has satisfied all the substantive elements alleged in its counterclaim.[5]

As to the claim for tortious interference with business relationships, the Court must accept for purposes of this motion that Plaintiff did impermissibly interfere with Defiant's relationships with both Sandia and potential investors and caused them not to enter into contracts with Defiant. *See, e.g.*, *Anderson v. Dairyland Ins. Co.*, 637 P.2d 837, 840 (N.M. 1981) (plaintiff in interference-with-prospective-relations claim must prove there was an actual prospective contractual relationship that would have been consummated absent the actions of the defendant). In addition, the Court must accept that Plaintiff acted with either an improper motive, or via improper means. *See Los Alamos Nat'l Bank v. Martinez Surveying Servs.*, 139 P.3d 201, 206

---

[5] It is this concession that makes the Court's resolution regarding Defiant's counterclaim for defamation different than the decision on Plaintiff's defamation claim, which the Court has dismissed in a prior opinion. In defense of its defamation claim, Plaintiff argued that the actual injury to its reputation consisted of the loss of potential investment, yet Plaintiff did not present any evidence identifying a potential investor who had actually been aware of the allegedly defamatory statement. Defiant, on the other hand, was relieved of the necessity to identify third parties who were aware of Plaintiff's allegedly defamatory statements, because Plaintiff conceded that defamatory statements had occurred and only attacked Defiant's proof of monetary damages resulting from those statements. The Court notes, however, that there is sparse non-hearsay evidence in the record supporting Defiant's counterclaim for defamation. This raises a question as to whether that counterclaim will be submitted to the jury. *See* Fed. R. Civ. P. 50.

(N.M. App. 2006). Accepting these facts as true, a jury could award nominal damages even if Defiant is not able to quantify any actual damages it may have suffered. *See Sanchez v. Clayton*, 877 P.2d 567, 573 (N.M. 1994) (in suits based on intentional torts, no allegation of actual damages is necessary to establish a cause of action and nominal damages may be awarded; where proof of actual damages is required, however, as in negligence, nominal damages may not be awarded); *see also Restatement (Second) Torts* § 907 (1979) (nominal damages may be awarded unless actual damage is necessary to the cause of action, as in negligence).[6] Since the cause of action for tortious interference with business relationships is not based on mere negligence, the alleged lack of evidence of specific monetary damages is not grounds for granting summary judgment on this claim.

In sum, although it may be persuasive to a fact-finder, Defiant is not legally bound by Lewis' testimony concerning damages, and there are other grounds allowing Defiant's counterclaims to go forward. Summary judgment therefore will not be granted on those counterclaims.[7]

---

[6]The Court notes the case law appears to refer to all intentional torts when discussing claims for which actual damages need not be alleged, although as discussed above New Mexico law seems to require an actual injury to reputation as an essential element of a defamation claim. It does not appear, therefore, that nominal or punitive damages could be awarded in this case for defamation, in the absence of actual injury to the plaintiff's reputation. *See* N.M.U.J.I. 13-1011 ("If you find that plaintiff should recover actual damages...you may award punitive damages."). This issue may need to be dealt with at trial, if the parties disagree with this proposition.

[7]The Court has not discussed the civil-conspiracy counterclaim because it is merely derivative of the other torts alleged, and the same analyses applied to those torts would apply to this counterclaim. As to the prima facie tort counterclaim, this is merely a catch-all tort that appears to be based on the same allegations as the other traditional torts, and is therefore likely to fail at trial. *See Padwa v. Hadley*, 981 P.2d 1234, 1242-43 (N.M.App. 1999) (prima facie tort may not be used to evade requirements of other established tort claims). Since the substance of the claim has not been attacked, however, it will be allowed to proceed to trial.

**Sandia's Counterclaims:** Sandia filed counterclaims for breach of contract, fraud, defamation, tortious interference with business relationships, and civil conspiracy, all of which Plaintiff attacks as unsupported by any admissible evidence of monetary damages. As with Defiant's counterclaims, the Court must assume that Sandia has satisfied all of the substantive requirements of each counterclaim. In addition, the analysis with respect to several of Sandia's counterclaims is the same as the analysis applied to Defiant's counterclaims. First, Sandia has filed a counterclaim for defamation, as did Defiant. Since it was not challenged by Plaintiff, the Court must accept that Plaintiff made defamatory statements about Sandia, and did so with knowledge they were false or with requisite malice. [Doc. 20, First Amended Counterclaim] As was the case with Defiant, even if Sandia produced no evidence of monetary damages during discovery, Sandia may be able to prove it is entitled to an award of nominal and/or punitive damages. The Court therefore need not decide whether Plaintiff's lack-of-monetary-damages argument is correct.

Similarly, several of Sandia's other counterclaims are for intentional torts. As discussed above, nominal damages and punitive damages may be awarded in cases involving intentional torts, even if no consequential or actual damages have been established. Therefore, Plaintiff's argument fails as to the counterclaims for fraud, tortious interference with business relationships, and civil conspiracy.

One difference between Sandia's counterclaims and Defiant's counterclaims is Sandia's counterclaim for breach of contract. As Sandia discusses, however, the same rule that applies to intentional torts also applies to claims for breach of contract -- if the substantive elements of such a claim are established, the failure to prove an amount of monetary damages is not fatal to the

claim. *See Camino Real Mobile Home Park Partnership v. Wolfe*, 891 P.2d 1190, 1199 (N.M. 1995) (if party proves existence of contract and breach, recovery of nominal damages may be permitted even if amount of actual damages cannot be established); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1372 (7th Cir.1990) ("The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages."); 1 Dan B. Dobbs, Law of Remedies § 3.3(2), at 294 (2d ed.1993) (stating that nominal damages are awarded when the plaintiff establishes a cause of action in contract cases, but cannot prove damages). Since Plaintiff has conceded the substantive elements of Sandia's breach-of-contract counterclaim, the argument that Sandia has failed to provide admissible evidence of damages is not grounds for dismissal of that counterclaim.[8]

For essentially the same reasons as those discussed with respect to Defiant's counterclaims, Plaintiff's motion for summary judgment on Sandia's counterclaims will be denied.

**Conclusion:** Based on the foregoing, Sandia's motions for summary judgment on Plaintiff's claim for breach of contract and on Sandia's counterclaims will be denied. Also, Plaintiff's motion for summary judgment on all counterclaims filed by Sandia and Defiant will be denied.

---

[8]Plaintiff's argument that Sandia's evidence of damages is inadmissible or irrelevant to the counterclaim for breach of contract, and may not be the basis of an award of compensatory damages, will be addressed at trial after relevant evidence concerning the issue has been adduced.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motions for partial summary judgment filed by Defendant Sandia Corporation (Docs. 196, 201) and Plaintiff (Doc. 212) be, and hereby are, DENIED. This is not a final, appealable order, as it does not dispose of all claims and counterclaims present in this case.

Dated this 15th day of October, 2007.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE