IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**DEFIANT TECHNOLOGIES, INC.,**

    Defendant-Counterclaimant,

v.                                                                               No. CIV 05-1041 BB/LAM

**NANODETEX CORPORATION, a Nevada corporation; ALAN P. SYLWESTER, an individual; and ANGELO L. SALAMONE, an individual,**

    Counterdefendants.

## MEMORANDUM OPINION AND ORDER DENYING NEW TRIAL

**THIS MATTER** is before the Court on the *Amended Motion* of Plaintiff Nanodetex and Counterdefendants Alan P. Sylwester and Angelo Salamone (hereinafter "Counterdefendants") *for Judgment as a Matter of Law, or in the Alternative, a New Trial, Based on the Insufficiency of the Evidence at Trial* [Doc. 505]. Having fully reviewed the submissions of counsel, the Court finds the *Motion* will be Denied.

**I.**     **Burden of Setting Aside Jury Verdict**

Counterdefendants seek relief from the jury verdict entered through two avenues. Initially, they request the Court to enter a judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Such a motion should be sparingly issued and

granted only if the proof is all one way or at least so overwhelmingly preponderant as to permit no other conclusion. *Strickland Tower Maintenance, Inc. v. AT&T Commc'ns, Inc.*, 128 F.3d 1422 (10th Cir. 1997); *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397 (10th Cir. 1988). Where evaluating the motion, the Court must consider the evidence and inferences most favorably to the nonmoving party, and refrain from weighing the evidence or passing on the credibility of the witnesses or substituting its judgment for that of the jury. *Magnun Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1502 (10th Cir. 1994).

Counterdefendants have also moved for a new trial pursuant to Federal Rule of Civil Procedure 59(a). While these motions may be combined, they serve different ends. *Stone v. First Wyoming Bank, N.A., Lusk*, 625 F.2d 332 (10th Cir. 1980); *Dow v. Baird*, 389 F.2d 882 (10th Cir. 1968). The Court has broader discretion on a motion for new trial, but the trial court does not sit as an additional juror. *dePerez v. Hospital del Maestro*, 910 F.2d 1004, 1006 (1st Cir. 1990); *Miller v. Heaven*, 922 F. Supp. 495, 499 (D. Kan. 1996). When a party moves for a new trial on the ground the jury verdict is not supported by the weight of the evidence, the verdict must stand unless it is clearly, decidedly or overwhelmingly against the weight of the evidence. *York v. AT&T Co.*, 95 F.3d 948 (10th Cir. 1996).

Counterdefendants can meet neither standard.

**II.     Nanodetex Failed to Prove Probable Cause**

Misuse of process can be shown in one of two ways: (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay or harassment. *Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 35 (N.M. 2007). "Probable cause in the malicious abuse of process is defined as a 'reasonable belief founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury.'" *Id.* quoting *DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d 277, 285 (N.M. 1997). The existence of probable cause is normally a question of law to be decided by the court. *Id.* When the plaintiff's motive in filing the claim is at issue, however, the question becomes one of fact. *Richardson v. Rutherford*, 787 P.2d 414, 427 (N.M. 1990); *cf. Southern Farm Bureau Cas. Co. v. Hiner*, 117 P.3d 960, 963 (N.M. App. 2005) (only when the essential facts on which probable cause turns are undisputed is the issue one of law).

At issue, then, is whether there are undisputed material facts and inferences sufficient to find probable cause. *Fleetwood*, 164 P.3d at 39. In the malicious prosecution abuse of process context a party "has probable cause only when a reasonable man in his position would believe, and the defendant does in fact believe, that he has sufficient information as to both the facts and the applicable law to justify him in initiating the criminal [civil] proceeding without further investigation or verification." *Hirth v. Hill*, 627 P.2d 1257, 1259 (N.M. App. 1981). Or as Defiant's

counsel told the jury, "Defiant must show that Nanodetex lacked a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that its claims could be established."  Tr. 895.  *See DeVaney*, 953 P.2d at 285.

The evidence presented at trial demonstrated that prior to their September 28, 2005, press conference, Counterdefendants "didn't know who Defiant Technologies was."  Tr. 243.  Nonetheless, the very next day the Nanodetex Board authorized this lawsuit against Defiant.  After the press conference a reporter "suggested" that Defiant had a license but never claimed that the suggested license was for the same technology to which Counterdefendants had exclusive rights.  Tr. 335, 389, 390.  Counterdefendants Sylwester and Salamone never investigated whether Defiant had a license or whether Defiant was in any way infringing on the rights of Nanodetex.  Indeed, they did no more than look at Defiant's website, and perhaps Mapquest, before recommending to the Board of Nanodetex that they sue Defiant.  Counterdefendants rely on two facts to support their claim of probable cause: (1) they were told by this business reporter that Defiant might have license rights from Sandia National Laboratories; and (2) Sylwester and Salamone reviewed Defiant's website and saw references to Sandia technology.  It is undisputed that they conducted no further factual investigation before Nanodetex authorized their $225 million lawsuit against Defiant, the day after they first learned of their existence.  It was only during the course of the

lawsuit that they learned Defiant did not even actually have a license from Sandia,[1] a "readily knowable relevant fact." *DeVaney*, 953 P.2d at 287. Nor did Counterdefendants make any attempt to investigate the nature of Defiant's relationship to Sandia, the product it was developing or to whom or how it would be marketed.

Mr. Sylwester informed the principals of Defiant "on more than one occasion that, in his belief, there were two ways to make money, and one of those was a lawsuit." Tr. 699. Moreover, Nanodetex issued a press release in conjunction with filing its lawsuit against Defiant. That press release reads in part:

> Not only are Defiant's officers all employees of Sandia, they are also some of the very individuals on the team that were supposed to transfer the technology to Nanodetex in the first place.
>
> Due to the conflicted interests of these Lab employees, vital terrorist fighting equipment that could have saved lives during the recent London subway and bus bombings has not been put to public use.
>
> "These employees have put the public in jeopardy, and the worst part is they did it for their own personal profit," said Nanodetex President Al Sylwester. "It turns out some people inside the Lab first tried to kill the license deal with us, then they messed with our funding, and now they are trying to steal our license and start their own company. This is a terrible case of conflict of interest," said Sylwester.

Ex. DDX-R.

Additional evidence suggests the reason Counterdefendants did not do any pretrial investigation into the merits of their claims against Defiant is because they were

---

[1] Even when Defiant disclosed it had no such license, early in the litigation, Counterdefendants persisted in their claims against Defiant. Tr. 357-62.

using the litigation to pressure Defiant. Within a month of Nanodetex filing its complaint against Sandia, Doug Atkins, one of Defiant's founders, received a phone call from a New York lawyer, Alan Schwartz.[2] Shortly after the Nanodetex Board authorized the suit against Defiant, Schwartz told Atkins "Defiant would be pulled into this lawsuit that Nanodetex was filing against Sandia if I didn't roll my company into Nanodetex." Tr. 690. Atkins responded, "look I'm not interested. <u>I don't have a license with Sandia</u>, I'm not going to – you know, I'm not interested in their IP and I wasn't interested in going into business with Al and Angelo." Tr. 691 (emphasis added). Schwartz then indicated "he was going to keep the technology tied up – the litigation would keep the technology tied up for years." Tr. 693. Two weeks later, without any effort to investigate Defiant's licensing, Nanodetex sued Defiant and its principals. Moreover, at the time they filed their lawsuit against Defiant, Counterdefendants were also well aware the filing of litigation could interfere with a new company's "ability to get financing or investment." Tr. 355.

Extortion is one of the specific examples of the wrongful use of legal procedures given by the New Mexico Supreme Court as a factual foundation for the malicious abuse of process cause of action. *Fleetwood*, 164 P.3d at 36. At the least, this scenario creates an issue of fact as to whether probable cause existed. *Dawley v. LaPuerta*

---

[2] Alan Schwartz had promoted Nanodetex in Israel and represented it in prior legal disputes. Tr. 364-66. When Sylwester informed Schwartz of the problems they were having and their discovery of Defiant, Schwartz responded, "If a $500 million lawsuit needs to be brought to get someone's attention by a large New York City firm, the choice is yours, now that you have plenty of money to take on this source of misinformation." Ex. F.

*Architectural Antiques, Inc.*, 62 P.3d 1271 (N.M. App. 2002); *Yucca Ford, Inc. v. Scarsella*, 509 P.2d 564, 567 (N.M. App. 1973). The above evidence raises sufficient factual issues and inferences for this claim to be submitted to the jury. *Fleetwood*, 164 P.3d at 39; *Dawley*, 62 P.3d at 1276-78; *Richardson*, 787 P.2d at 421; *see also Messinger v. Fulton*, 252 P.2d 904, 907 (Kan. 1953).

**III.   The Evidence Supports the Jury's Verdict Based on Lack of a Reasonable Pre-filing Investigation**

Counterdefendants correctly point out that reliance on the advise of counsel is a defense to abuse of process when "sought in good faith and given after full disclosure of all [known or readily knowable] relevant facts." *DeVaney*, 953 P.2d at 287 n. 8 (quoting the RESTATEMENT (SECOND) OF TORTS § 675(b)). Like probable cause, the advice of counsel defense is based on a reasonable pretrial investigation and then full disclosure of the facts to counsel. The problem Counterdefendants have is that they provided the jury no evidence of the pre-filing investigation which is necessary to support "a reasonable belief in the validity of the allegations of fact or law of the underlying claim." *Id*. Mr. Salamone testified only that "[c]ounsel advised us to move forward, and that we had a chance, a potential chance of winning if we did." Tr. 845. This is substantially short of a recommendation by counsel,[3] and given the facts outlined in the previous probable cause discussion, it is clear a reasonable investigation would not have sustained their claims.

---

[3]   *See Thompson v. General Finance Co.*, 468 P.2d 269, 283 (Kan. 1970).

7

**Mere reliance upon the advice of counsel is not sufficient to establish a defense to an abuse of process claim.** *Mulligan v. Rioux*, 643 A.2d 1226, 1242 (Conn. 1994). **The party relying on the defense has the burden to prove he gave his attorney all the material facts he should have known and that he was not just setting up the attorney as a shield.** *Bertero v. National General Corp.*, 529 P.2d 608, 616 (Cal. 1974). **Advice of counsel is a "valid defense only if the advice of counsel is provided after disclosure of all material facts the defendant knew or could have discovered with reasonable diligence."** *Id.*; *see also DeVaney*.

**Whether defendants have fully investigated and disclosed all material facts to their attorney is generally a jury question.** *Barbara Lane Stores v. Brumley*, 195 F.2d 1006, 1007 (6th Cir. 1952); *Gamble v. Webb Quarterback Club*, 386 So. 2d 455 (Ala. Civ. App. 1980). **Here, there was adequate evidence to support the jury's rejection of the advice of counsel defense.** *Chipouras v. AJ&L Corp.*, 290 S.E.2d 859, 861 (Va. 1982); *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 158 (Utah 1991).

**IV.**   **Damages**

**Evidence of lost profits consisted largely of a very detailed pro-forma projection created for trial by Patrick Lewis. Ex. AZ. Counterdefendants originally stipulated to the admissibility of this exhibit prior to trial. They then challenged it at trial as "irrelevant." This was overruled as it was clearly relevant during the damage phase of the trial.** *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995).

**Although he had never created a new business, Lewis did have experience in estimating personnel and material needs for start-up projects while at Sandia. Vol. VI 73, 91. He also consulted with several people at Technology Venture Corporation who had a track record in creating start-up businesses with Lab technology. Vol. VI 55, 95. They instructed him on the proper method for creating a pro forma income projection and recommended additional reading on the subject. Vol. VI 56. Lewis followed those recommendations and used their examples.** *Id.* **He also read** *Fed Biz Opportunities* **and talked directly to customers. Vol. VI 94.At the time of trial, Defiant had actually started its business and the sales projections created earlier by Lewis had proved to be right on the mark. Vol. VI 41-42, 44-45, 60. An officer of a new company is qualified to render an expert opinion on likely future profits if he has experience in related ventures.** *State Office Systems, Inc. v. Olivetti Corp. of America*, **762 F.2d 843, 846 (10th Cir. 1985).**

**Counterdefendants Sylwester and Salamone testified on their investments in and projections for Nanodetex. Tr.201, 215, 227, 290. They also testified the litigation scared off investors and required scarce resources be siphoned into legal fees. Tr. 46. Evidence on a competitor's business is one standard to evaluate the lost profits of new businesses.** *Miller Indus. v. Caterpillar Tractor Co.*, **733 F.2d 813, 822 (11th Cir. 1984);** *Roboserve, Inc v. Kato Kagaku Co.*, **873 F. Supp. 1124, 1140 (N.D. Ill. 1995),** *aff'd in part, vacated other grounds*, **78 F.3d 266 (7th Cir. 1996). Defiant also introduced evidence that**

in addition to the business lost as a result of the malicious abuse of process by Counterdefendants, Defiant had actually expended $232,000.00 on legal fees to defend itself. Tr. 63-65. This represented not only out-of-pocket expense but more importantly a loss of potential working capital to promote Defiant's products. When asked how Defiant had suddenly been able to sell and deliver products after this Court's summary judgment, Patrick Lewis said simply, "Well, the legal fees have certainly gone down since we – since the charges against us were dismissed and so we have been taking money that we would have been paying toward legal bills and investing it into the company to develop products for sale." Tr. 42, 61. After considering this evidence, the jury awarded $1,000,000.00 in actual damages for the malicious abuse of process by Counterdefendants.

New businesses are not precluded from recovering reasonably supportable damages. *United Int'l Holdings v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1230 (10th Cir. 2000). "Rather, damages are precluded only where there is mere anticipation that an entity will enter the marketplace or where the damages are themselves not reasonably determinable." *Id*; *see also Villareal v. Billings*, 294 P. 1111, 1112 (N.M. 1930). Here, Defiant had actually begun to sell and deliver products and would likely have been able to do so much sooner but for the funds diverted to the Nanodetex litigation.

> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any

>   amend for his acts. In such a case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.

*King & King Enters. v. Clamplin Petroleum Co.*, 657 F.2d 1147, 1162 n. 1 (10th Cir. 1981). "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Id.; see also Randy's Studebaker Sales, Inc v. Nissan Motor Corp. In U.S.A.*, 533 F.2d 510, 518 (10th Cir. 1976); *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1365 (7th Cir. 1996); CHARLES T. MCCORMICK, MCCORMICK ON DAMAGES § 27. Lost profits are therefore appropriate when they are the only evidence available. *Id.; Protectors Ins. Serv., Inc. v. U.S. Fidelity & Guar. Co.*, 132 F.3d 612, 617 (10th Cir. 1998). Defiant's evidence of lost profits based on limited sales was thus sufficient. *See In re Merritt Logan, Inc.*, 901 F.2d 349 (3d Cir. 1990); *Villareal*, *supra*.

   Nor did the jury uncritically accept the pro-forma presented by Mr. Lewis. Rather, they awarded only about half of the amount Defiant requested for lost profits and attorneys' fees. There is thus little basis to support Counterdefendants' surmise the verdict is based on passion or prejudice.

   Counterdefendants claim that Defiant's damages were not properly discounted to present value is also incorrect. Defiant's claims were not for damages on profits projected into the future, but rather for profits that would have been received in the three years prior to trial. VI 27. Therefore no discount factor is necessary. *Knabe v.*

*National Supply Div. of Armco Steel Corp.*, 592 F.2d 841, 845 (5th Cir. 1979). If anything, logic would dictate this argument should be focused on Counterdefendants liability for pre-judgment interest. NMSA 1978 § 56-8-4A(2); *Gilmore v. Duderstadt*, 961 P.2d 175 (N.M. App. 1998).

### *Conclusion*

For the above stated reasons, Counterdefendants' *Amended Motion for Judgment as a Matter of Law, or in the Alternative, a New Trial, Based on the Insufficiency of the Evidence at Trial* is DENIED.

SO ORDERED this 9th day of May, 2008.

*[signature: Bruce D. Black]*

**BRUCE D. BLACK**
**United States District Judge**